IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GARY JOSEPH CONTI,<br><br>Defendant. | CR 13-65-GF-BMM<br><br>**ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29(c)** |

Defendant Gary Joseph Conti (Conti) has moved for a judgment of acquittal pursuant to FED. R. CRIM. P. 29(c). (Doc. 166.) The United States (Government) opposes that motion. (Doc. 168.)

**Background**

A jury convicted Conti on March 7, 2014, of one count of bankruptcy fraud, in violation of 18 U.S.C. § 157, following trial. (Doc. 156.) The Court denied previously Conti's FED. R. CRIM. P. 29 motion at the close of the government's

1

case, at 9:35 a.m. on March 6, 2014, and again at the close of all evidence at 3:35 p.m. on the same day.

**Discussion**

Fed. R. Crim. P. 29(c) allows a defendant to move for a post-trial judgment of acquittal. Fed. R. Crim. P. 29(c). The Court must view the motion in a light most favorable to the Government. *United States v. Ching Tang Lo*, 447 F.3d 1212, 1221 (9th Cir.2006). The Court must deny the motion if "a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.* Conti raises three issues.

**Failure of Proof**

Conti alleges first that the Government failed to prove that his actions were "untethered" to any underlying fraudulent scheme. (Doc. 166 at 2-3.) Conti argues primarily that the Government impermissibly predicated proof of any bankruptcy fraud "only on acts that occur[ed] within the bankruptcy context that are untethered to the underlying fraudulent scheme." *United States v. Milwitt*, 475 F.3d 1150, 1160 (9th Cir.2007). Conti's argument, stated broadly, contends that the Government must base a charge of bankruptcy fraud under section 157 upon an alleged fraud that took place entirely outside the bankruptcy context. (Doc. 166 at 2, 3.) Conti claims, based on *Milwitt* and his interpretation of the requirements of section 157, that the Government failed to present any evidence that Conti used

bankruptcy, fraudulent or otherwise, as a means of executing or concealing the underlying fraudulent scheme that comprises the rest of the indictment. (Doc. 166 at 2, 3.)

The Government argues that Conti has conducted a fraudulent scheme in the form of two distinct actions unrelated to the alleged scheme that comprises the rest of the indictment. (Doc. 168 at 3.) The Government first argues that Conti intentionally deprived creditors of access to his resources by "creating an alias name bank account, hiding assets in that account, and then denying ownership or control over the alias name business." (Doc. 168 at 3.) The Government also contends that Conti's hiding away of the money that he had derived from the Po'Ka project represented a means of "thwart[ing] the trustee and the creditors." (Doc. 168 at 3.) The Government concludes that Conti's money constitutes an asset, and "the fraudulent scheme [involved] the concealment of the asset through disavowal of the ownership of a valuable asset." (Doc. 168 at 3.)

18 U.S.C. § 157(3) criminalizes "mak[ing] a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition." The United States Court of Appeals for the Ninth Circuit has indicated that proof of a violation of section 157 should include proof of the specific intent to defraud an identifiable victim. *Milwitt*, 475 F.3d at 1156. *Milwitt* further suggests that "bankruptcy fraud

under § 157 cannot be predicated only on acts that occur within the bankruptcy context that are untethered to [an] underlying fraudulent scheme." *Milwitt*, 475 F.3d at 1160.

*Milwitt* explains simply that a debtor's declaration of bankruptcy must be the tool to execute some alleged fraudulent scheme outside of the bankruptcy itself in order to constitute a violation of 18 U.S.C. § 157. *Milwitt*, 475 F.3d at 1160. *Milwitt* terms the use of the debtor's bankruptcy as a tool to perpetrate the alleged fraudulent scheme as the "bankruptcy nexus." *Milwitt*, 475 F.3d at 1156, 1160. Such a nexus must exist to sustain a conviction under 18 U.S.C. § 157.

The question arises whether the Government alleged a sufficient "bankruptcy nexus" between Conti's filing of his declaration of bankruptcy and an alleged fraudulent scheme outside the bankruptcy proceeding. Analysis begins with the charging document. *Milwitt*, 475 F.3d at 1156. The indictment alleged that Conti "concealed and attempted to conceal assets and property, and made false representations as to the his [sic] assets by failing to disclose funds available to him in a bank account," in violation of 18 U.S.C. § 157, "*with the intent to devise a scheme and artifice to defraud his creditors* in a cause before the U.S. Bankruptcy Court for the Northern District of Oklahoma." (Doc. 1 at 26-27) (emphasis added).

The indictment alleged a fraudulent scheme in the form of Conti's intent to defraud his creditors. This allegation raised a "bankruptcy nexus" in the form of

4

Conti's scheme to defraud "creditors" through the use of his bankruptcy. *Milwitt*, 475 F.3d at 1156; (doc. 1 at 27). To best protect Conti's rights, the Court reviewed additional decisions that explain the contours of the "bankruptcy nexus" to ensure the sufficiency of the Government's charge.

An attempt to defraud creditors and the filing of a bankruptcy petition in furtherance of that attempt constitutes a "scheme [that] qualifies as 'outside' the bankruptcy for purposes of the statute." *United States v. Quan*, 358 F. App'x 854, 856 (9th Cir. 2009). An indictment that alleges that bankruptcy proceedings served part of a larger fraudulent scheme to hide assets from other creditors constitutes a "fraudulent scheme separate from the bankruptcy proceedings." *United States v. Yagman*, 345 F. App'x 312, 313 (9th Cir. 2009). These decisions make clear that Conti's scheme to defraud creditors constitutes a sufficient "bankruptcy nexus" as required by *Milwitt*, 475 F.3d at 1156.

The Government sought to prove that Conti carried out a scheme to defraud his creditors through Conti's declaration of bankruptcy. The Government did not need to prove that Conti actually defrauded any creditors in order to establish bankruptcy fraud. *United States v. Manfredi*, No. CIV. S 06-416 FCD, 2008 WL 686859 at *7 (E.D. Cal. Mar. 11, 2008). The making of a false representation itself constitutes the act that 18 U.S.C. § 157 forbids. *Manfredi*, 2008 WL 686859 at *7. The Government introduced voluminous evidence through cross-examination that

raised questions of fact about whether Conti had been honest about the assets that he disclosed during the bankruptcy proceeding. (*See generally* doc. 167 at 79-111.)

Conti further solicited on cross-examination of attorney Sidney Carl Swinson (Swinson), a bankruptcy trustee for the Northern and Eastern Districts of Oklahoma, discussion about whether an asset that Conti actually had declared on his bankruptcy schedule – tools valued at $1,500.00 – would be "insufficient" to divide up among Conti's "tens of thousands of creditors." Conti's discussion with Swinson placed before the jury a question of the sufficiency of Conti's declared assets to repay Conti's creditors. Swinson's comments demonstrated the potential shortfall of payment to creditors based on Conti's representations during the bankruptcy proceeding.

The Government also addressed evidence of Conti's intent. As a "recap" of earlier testimony, the Government suggested that Conti had "pulled out all of the money in the first months before [his] bankruptcy. And once [his] bankruptcy was discharged, money went back into the account." (Doc. 167 at 110:3-5.) Shortly thereafter, the Government questioned Conti about whether a personal debt from Learning Associates to Conti appeared on Conti's bankruptcy petition. Conti replied "[t]hat's a good question." (Doc. 167 at 111:10.)

The jury had before it evidence sufficient for a rational trier of fact to have found Conti guilty beyond a reasonable doubt of each element of 18 U.S.C. § 157.

6

*Ching Tang Lo*, 447 F.3d at 1221. The Government's proof at trial, viewed in the light most favorable to the Government, constitutes sufficient evidence to sustain the jury's conviction. *Id.* No failure of proof exists, therefore, on the charge that Conti schemed to defraud his creditors and to mislead the trustee of the bankruptcy estate.

**Constructive Amendment of the Indictment**

Conti alleges next that the Government constructively amended the indictment. (Doc. 166 at 3.) Conti identifies the difference between the indictment's charging language and the proof that the Government offered at trial. (Doc. 166 at 3.) The indictment alleged that Conti "made false representations as to the his [sic] assets by failing to disclose funds available to him in a bank account at the Native American Bank in Browning, Montana." (Doc. 1 at 27.) The Government presented evidence at trial that "Conti failed to report the Learning Associates contract with Po[']Ka . . . [and] that he should have listed a promissory note from Learning Associates on his list of personal assets." (Doc. 166 at 4.) Conti contends that "the indictment was constructively – and improperly – amended." (Doc. 166 at 4.)

The Government counters that, whether Conti raises a question of variance or constructive amendment, any "distinction does not matter because the government proved that Conti did not disclose the account." (Doc. 168 at 6.) The

framework to answer this question proves somewhat convoluted and defies easy definition. *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir.2002).

A constructive amendment to an indictment occurs when "the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Ward*. No. 12-50536, 2014 WL 1317155 at *4 (9th Cir. Apr. 3, 2014). The United States Supreme Court has explained that a constructive amendment occurs by expanding the conduct for which a defendant can be found guilty beyond the bounds of the indictment. *Stirone v. United States*, 361 U.S. 212, 219 (1960).

The Ninth Circuit has held, conversely, that no constructive amendment takes place when the indictment contains "superfluously specific language" that describes alleged conduct irrelevant to a defendant's culpability under the applicable statute. *Ward,* 2014 WL 1317155 at *6. To determine whether a constructive amendment has occurred requires ensuring that the jury convicted Conti based solely on the conduct with which the indictment charged him, despite the fact that the Government allegedly introduced proof at trial that includes uncharged conduct that would satisfy the same element. *Ward,* 2014 WL 1317155 at *6. "Typically, that assurance will be provided by jury instructions requiring the jury to find the conduct charged in the indictment before it may convict." *Ward,* 2014 WL 1317155 at *6.

8

The Court analyzes first the instructions that the jury received. The language in the jury instructions must reflect the conduct with which the indictment charged Conti. *Ward,* 2014 WL 1317155 at *6. The final jury instructions in Conti's case spanned fifty-six pages. (Doc. 160.) Three of those instructions addressed the bankruptcy fraud charge upon which the jury returned a guilty verdict. (Doc. 160 at 41-43.) Conti raised no objection to the relevant instructions at trial.

Instruction 26 mirrored the language of the indictment. (Doc. 160 at 41.) Instruction 27 provided the statutory language of 18 U.S.C. § 157. (Doc. 160 at 42.) Both instructions define the criminal act as making a false representation in relation to a bankruptcy proceeding with the intent to defraud creditors. (Doc. 160 at 41, 42.) The legally operative language in instructions 26 and 27 defines exclusively the making of a false representation as the criminal act.

Instruction 28 explains more practically the elements necessary for the Government to prove in order for the jury to convict Conti. (Doc. 160 at 43.) This instruction explains at length, and in a more accessible manner, the conduct that the United States Code criminalizes. The language identifies exclusively the false or fraudulent representation as the criminal act.

The instructions to the jury focused exclusively upon the criminal act of making a false or fraudulent representation in the context of a bankruptcy

proceeding. The question arises whether the proof adduced at trial could have shown the conduct that those instructions described. The jury heard during the Government's opening arguments that the evidence would show an account "in Browning, Montana at the Browning Native American Bank" through which Conti conducted bankruptcy fraud. The Government delivered evidence to that effect to the jury in the form of testimony from Swinson on direct examination.

The Government introduced multiple exhibits that related to Conti's bankruptcy declarations through Swinson's testimony. Swinson provided foundation for the introduction of Government Exhibits 190 to 196. The Government questioned Swinson about each of the exhibits to determine whether the exhibit should have listed bank accounts owned or controlled by Conti. For example, Swinson opined that the Government's Exhibit 191 should have contained a full listing of the debtor's personal property. The Government asked whether a full listing of the debtor's personal property should have included bank accounts. Swinson replied that a full listing of the debtor's personal property would encompass any bank accounts owned by a debtor.

Of particular note, the Government asked Swinson whether Government's Exhibit 196, an e-mail response from Conti's bankruptcy attorney that contained a schedule of assets for the bankruptcy proceeding, would have been the place where a hypothetical Learning Associates bank account should have been displayed.

Swinson replied affirmatively. Swinson clarified that he had sought to learn whether Learning Associates possessed any assets other than real estate.

This discussion continued on redirect when the Government inquired about specific checks made out to Conti. The Government asked whether Swinson would have expected Exhibit 32, an approximately $8,000.00 check made out to Conti in January 2008, to have been disclosed as part of the bankruptcy proceedings. Swinson replied "yes." The Government thereafter asked Swinson about a series of other checks, to which Swinson replied that the checks would "very much so" have constituted a matter of interest to the bankruptcy trustee during the bankruptcy proceeding.

The evidence at trial, viewed in the light most favorable to the Government, shows at least one bankruptcy schedule where Conti should have declared the existence of a bank account. *Ching Tang Lo*, 447 F.3d at 1221. Also viewing this motion in the light most favorable to the Government, the jury assumed permissibly that Conti would have deposited somewhere each of the checks in evidence, particularly given Conti's high level of financial literacy and desire to have money "appreciate in any way." *Id;* (*see also* doc 167 at 113:24). Considered together, in the light most favorable to the Government, the jury could have assumed permissibly that Conti failed to disclose the absent account to the bankruptcy trustee. *Ching Tang Lo*, 447 F.3d at 1221

Scant evidence exists in the record to suggest that account was located at the Native American Bank in Browning, Montana. Both the indictment and the proof adduced at trial address, however, Conti's failure "to disclose funds available to him in a bank account." (Doc. 1 at 27.)  The precise location of such an account represents "superfluously specific language describing alleged conduct irrelevant to the defendant's culpability under the applicable statute." *Ward*, 2014 WL 1317155 at *6.

The Government did not alter the charging terms of the indictment, either literally or in effect. *Ward,* 2014 WL 1317155 at *6.   The jury did not convict Conti for any conduct beyond the bounds of the indictment.  *Stirone*, 361 U.S. at 219. The jury's determination has a clear, logical basis that arises from evidence that supports the conduct charged in the indictment. *Ward*, 2014 WL 1317155 at *6.

**Variance from the Indictment.**

Conti further alleges that the "indictment served to distract the defendant from the proof that would ultimately be used against him," and that as a result, a variance has occurred. (Doc. 166 at 5.)  A variance to an indictment takes place when "the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Ward*, 2014 WL 1317155 at *4. Said another way, a variance involves

12

a divergence between the allegations set forth in the indictment and the proof offered at trial. *Ward,* 2014 WL 1317155 at *4. A non-prejudicial variance arises when an immaterial divergence arises between the facts alleged in the indictment and those offered at trial. *Ward,* 2014 WL 1317155 at *5.

Conti identifies a divergence between the indictment and the Government's case against Conti at trial. The trial evidence established that Conti had failed to disclose assets – Conti concedes at a minimum "the Learning Associates contract with Po[']ka," and "a promissory note from Learning Associates" – to the Bankruptcy trustee. (Doc. 166 at 4.) The indictment charged that Conti had "concealed and attempted to conceal assets and property, and made false representations as to the his [sic] assets by failing to disclose funds available to him in a bank account . . . ." (Doc. 1 at 26-27.) The indictment focuses upon bankruptcy fraud that arose from a bank account. The proof at trial focused upon the Learning Associates contract with Po'ka, the promissory note from Learning Associates, and some proof of the bank account. The difference between the language in the indictment and the evidence offered at trial constitutes a divergence.

This divergence results in a variance, rather than a constructive amendment. A variance occurs where the Government presents evidence of "one set of facts with a single divergence." *See United States v. Adamson*, 291 F.3d 606, 616 (9th

Cir. 2002). Those facts surround the misrepresentation that Conti made to the bankruptcy court. *Adamson*, 291 F.3d at 616. The Court must determine whether this divergence constituted a prejudicial variance.

The Ninth Circuit has determined that a variance requires acquittal only where the divergence between the indictment and the case made at trial "acts to prejudice the defendant's rights." *Ward,* 2014 WL 1317155 at *4. Precedent draws a blurry line, however, regarding whether a variance prejudices the defendant. This determination involves a fact intensive inquiry.

A variance prejudiced the defendant where the indictment "specified a different particular misrepresentation [and therefore] failed to inform the defendant of the actual misrepresentation that would be shown at trial, but [] also affirmatively misled the defendant and obstructed his defense at trial." *Adamson*, 291 F.3d 606, 615 (9th Cir. 2002). The indictment charged that the defendant misrepresented that computer servers had been upgraded. *Adamson*, 291 F.3d at 615. The government claimed at a pretrial hearing that "the misrepresentation in the indictment was the only misrepresentation at issue." *Adamson*, 291 F.3d at 615. The indictment combined with the government's representation at the pretrial hearing inhibited the defendant's preparation of a defense sufficient to ward off the government's proof at trial. *Adamson*, 291 F.3d at 615. Such a divergence constituted a prejudicial variance. *Adamson*, 291 F.3d at 615.

14

Prejudice also arose from a variance where the indictment charged a defendant with sexual abuse of child that occurred on an Indian reservation during the 1992 summer. *United States v. Tsinhnahijinnie*, 112 F.3d 988, 990-92 (9th Cir.1997). The proof at trial fluctuated between placing the abuse at the place and the time in indictment, and placing it off the reservation during 1994. *Tsinhnahijinnie*, 112 F.3d at 990-92. *Adamson* and *Tsinhnahijinnie* confirm that the effect upon the defendant's substantial rights must be demonstrable before the variance becomes sufficiently prejudicial as to require acquittal.

Conversely, the Ninth Circuit has determined that a variance did not prejudice the defendant in a mail fraud prosecution where the indictment charged "a scheme to defraud and to obtain money," but the jury instructions required proof that defendants schemed to defraud by obtaining "money or property." *Jeffers v. United States*, 392 F.2d 749, 752-53 (9th Cir.1968). Similarly, no prejudice resulted from a variance where an indictment charged the defendant with "transporting in interstate commerce $10,000 that was taken by fraud from Ron McCallum." *United States v. Von Stoll*, 726 F.2d 586, 586 (9th Cir. 1984). The instructions and proof at trial allowed the jury to convict the defendant of taking $10,000 from McCallum's business partner. *Von Stoll*, 726 F.2d at 586. Correspondingly, a variance failed to prejudice a defendant in a mail fraud prosecution where the indictment charged "a scheme to defraud and to obtain

money." *United States v. Olson*, 925 F.2d 1170, 1174-75 (9th Cir. 1991). The jury instructions required proof that defendants schemed to defraud by obtaining "money or property." *Olson*, 925 F.2d at 1174-75. *Jeffers*, *Von Stroll*, and *Olson* each embody a defendant's failure to demonstrate prejudice to that defendant's substantial rights.

Precedent confirms at a minimum that Conti must demonstrate prejudice to his substantial rights as a result of the variance in order to receive an acquittal. *See* 3 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 516 (4th ed. 2010). The question before the Court emerges, what, if any, prejudice arose from the variance.

Conti's alleges only that the indictment "served to distract." (Doc. 166 at 5.) Conti argues in conclusory fashion that the variance distracted him from the proof that the Government would offer against him. (Doc. 166 at 5.) Conti identifies no precedent in support of his position. (Doc. 166 at 5.) Conti further fails to establish that the variance "affirmatively misled" him regarding the evidence upon which the Government would rely at trial. *Adamson*, 291 F.3d at 615. The Government's evidence related to the core of the criminal conduct charged against Conti – the alleged conspiracy and scheme to defraud the Po'ka Project.

The Court analyzes this motion in the light most favorable to the Government. *Ching Tang Lo*, 447 F.3d at 1221. The jury heard the Government's

proof of both the legally operative conduct with which the indictment charged Conti *and*, based upon Conti's concessions, at least two other failures to disclose assets. *See* pp. 5-11, *supra*; (doc. 166 at 4). The jury can consider evidence not referenced in the indictment for "other legitimate purposes" without effecting a variance to the indictment. *United States v. Kahan & Lessin Co.*, 695 F.2d 1122, 1125 (9th Cir.1982).

The evidentiary references to Conti's failures to disclose "the Learning Associates contract with Po[']ka," and a "promissory note from Learning Associates" further do not constitute conduct "distinctly different" from Conti's failure to disclose assets, as the indictment alleged. *United States v. Choy*, 309 F.3d 602 (9th Cir.2002); (doc. 166 at 4). Without a showing of prejudice, or some distinct difference between that conduct and the indictment, no indication exists that the Government "substantially altered at trial" "the crime charged in the indictment." *Adamson*, 291 F.3d at 615. A variance requires acquittal only when it deprives a defendant of the right to fair notice, constitutes a separate offense, or prejudices the substantial rights of the accused by joining multiple offenses without proven connection. *See, e.g., Adamson*, 291 F.3d at 616.

Conti raised no objection on relevance grounds to Swinson's discussion of the "the Learning Associates contract with Po[']ka," and a "promissory note from Learning Associates." (Doc. 166 at 4.) Conti failed to object to the introduction of

a single exhibit. Conti further failed to object to any questions that the Government asked Swinson. In fact, Conti inquired further of Swinson about "the Learning Associates contract with Po[']ka," and a "promissory note from Learning Associates" on cross-examination of Swinson. (Doc. 166 at 4.) Conti's waiver of objection and subsequent inquiry about evidence of "the Learning Associates contract with Po[']ka," and a "promissory note from Learning Associates" proves significant.

The Court cannot discern how this variance affected Conti's substantial rights. The indictment specified that Conti failed to disclose assets from a single source. The evidence at trial showed that Conti failed to disclose assets from that single source and two additional sources. The precise location of the assets that a defendant fails to disclose proves immaterial to a conviction under 18 U.S.C. § 157. *Manfredi*, 2008 WL 686859 at *7. The variance did not affect Conti's substantial rights. *Von Stoll*, 726 F.2d at 587.

**Conclusion**

Therefore,

**IT IS ORDERED**, that Conti's motion for judgment of acquittal pursuant to FED. R. CRIM. P. 29(c) (Doc. 166) is **DENIED**.

Dated the 21st day of April, 2014.

Brian Morris
United States District Court Judge